ALCAN ALUMINUM CORPORATION, Plaintiff/Counterdefendant-Appellee,

v.

CARLSBERG FINANCIAL CORPORATION, Defendant/Counterclaimant-Appellant.

Nos. 81–4266, 81–4450.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1982.

Decided Oct. 4, 1982.

Rehearing Denied Oct. 28, 1982.

Norbert A. Schlei, Hughes, Hubbard & Reed, Los Angeles, Cal., argued, Carol A. Chase, Los Angeles, Cal., on brief, for defendant/counterclaimant-appellant.

Lynn A. Pasahow, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Lee A. Thompson, Stanford, Cal., for plaintiff/counterdefendant-appellee.

Before BROWNING, DUNIWAY, and WRIGHT, Circuit Judges.

DUNIWAY, Circuit Judge:

These are appeals by Carlsberg Financial Corporation from a summary judgment

granting specific performance of a written contract to purchase land and from an order finding Carlsberg in contempt of court for failure to comply with that judgment, no stay having been obtained. We affirm in both cases.

## I. *The Facts.*

Alcan Aluminum Corporation and Carlsberg Financial Corporation agreed in writing that Alcan would sell to Carlsberg an industrial plant located at Rocklin, California, for $3.7 million. The contract recited that the title to the property was to be subject only to seven exceptions listed in a preliminary report issued by First American Title Company and attached as an exhibit to the contract. It developed that Pacific Gas & Electric Co. has an easement 60 feet wide which runs in a north/south direction along the eastern boundary of the property. It adjoins but is not upon the property along almost the length of that boundary. However, at the northeast corner of the property there is a triangular extension to the east which affords access over the property to the tracks of the Southern Pacific Company which adjoin the easement on the east side of it. The easement was granted to P.G. & E. for a power line, and there are steel towers 80 feet high carrying high tension power lines on the easement. There are no towers on the property here in question, but the high tension lines do cross the triangular piece of the property at the northeast corner. The easement is not one of the exceptions listed in the preliminary title report.

When this easement was discovered, Carlsberg repudiated the contract and refused to perform. Alcan then filed this action. Its amended complaint stated three claims for relief: one for specific performance of the contract, one for reformation of the contract to include the P.G. & E. easement among the exceptions in the preliminary title report, and one for damages for breach of the contract. Alcan moved for summary judgment on the claim for specific performance, and the trial court granted that motion. The court also entered summary judgment against Carlsberg on a counterclaim filed by it against Alcan and dismissed the other two claims against Carlsberg stated in Alcan's amended complaint. There remain pending in the district court only a claim by Alcan against the title company based upon its failure to list the P.G. & E. easement as an exception in its preliminary report and a similar claim by Carlsberg against the title company. No claims remain as between Alcan and Carlsberg.

The summary judgment is based upon the fact, which is not disputable on this record, that the high tension wires which cross a portion of the property would be visible to anyone who looked. This is shown, without possibility of dispute, by affidavits and by photographs.

## II. *Validity of the Appeal.*

In its order, the trial court stated: "the undersigned expressly determines that there is no just reason for delay in the entry of final judgment on this order." Obviously, this was intended to be compliance with Rule 54(b), F.R.Civ.P.

After the appeal was taken, we decided the case of *Morrison-Knudsen Co. v. Archer*, 9 Cir., 1981, 655 F.2d 962. There, as in this case, the court ordered entry of a summary judgment under Rule 54(b). We held that it was error to do so. In so doing, we said:

Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal or factual issues will weigh heavily against entry of judgment under the rule,

and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings. (*Id.* at 965.)

Because an appealable judgment or order is essential to our jurisdiction, we must consider whether, in the light of the *Morrison-Knudsen* decision, we have a final judgment before us. We conclude that we do.

First, we note that in *Morrison-Knudsen* we did not dismiss the appeal, as we would have done if the judgment were not appealable. Instead, we vacated the judgment and remanded for further proceedings. We also concluded that the case was not a proper one in which to use Rule 54(b) because "[t]he claims disposed of by the Rule 54(b) judgment were inseverable, both legally and factually, from claims that remained unadjudicated in the district court, and there were no unusual and compelling circumstances that otherwise dictated entry of an early, separate judgment on that part of the case. It was error, therefore, for the district court to enter the separate judgment under Rule 54(b)." *Id.* at 966.

We are strengthened in our belief that *Morrison-Knudsen* does not require dismissal here by the fact that the same panel that decided it also heard, on the same day, *Bryant v. Technical Research Company,* 9 Cir., 1981, 654 F.2d 1337, another case in which a final judgment was entered under Rule 54(b). *See* footnote 3, 654 F.2d at 1341, where we said:

3. The district court's final judgment did not dispose of all the issues between all the parties, and therefore is not appealable absent certification. 28 U.S.C. § 1291; Fed.R.Civ.P. 54(b). Although the district court judgment did not refer to Rule 54(b), it used the certification language of the rule: "there is no just reason for delay, [and the court therefore] expressly directs that judgment be entered." This court therefore has jurisdiction to hear TRC's appeal on the issue of liability between the defendants. The district court determination of whether "just reason for delay" exists will not be disturbed unless there is a "clear showing of an abuse of discretion." *Fed. Deposit Ins. Corp. v. First Nat'l. Fin.,* 587 F.2d 1009, 1013 (9th Cir. 1978).

It does not appear that the district judge in *Bryant* made the findings that *Morrison-Knudsen* requires. We reversed the summary judgment because there were material issues to be tried, not because the judge had not made *Morrison-Knudsen* type findings.

It is thus apparent that the lack of *Morrison-Knudsen* findings is not a jurisdictional defect. The question is rather whether such findings are necessary to determine whether the adjudicated and unadjudicated claims are severable and whether the circumstances are sufficiently compelling to justify entry of a separate judgment. The posture of the case is readily obtainable from the briefs and record. Findings on the subject would have been helpful, but without them we can readily decide that the Rule 54(b) order is valid. Here, as in *Curtiss-Wright Corp. v. General Electric Co.,* 1980, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1, we can say that the court did not abuse its discretion in making the Rule 54(b) order. The order and judgment dispose of the case as between Alcan and Carlsberg. It may make further litigation between either of those parties and the title company unnecessary. It may facilitate settlement of the remaining claims (see 446 U.S. at 8, n. 2, 100 S.Ct. at 1465, n. 2), and it may well aid the expeditious decision of those claims if they are not settled. It is not required that the Rule 54(b) claims be separate from and independent of the other claims. *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 1956, 351 U.S. 445, 450–52, 76 S.Ct. 904, 907–08, 100 L.Ed. 1311.

### III. *The Summary Judgment, Case No. 81–4266.*

Jurisdiction of the federal courts in this case arises from diversity of citizenship, 28 U.S.C. § 1332(a)(1). California law applies. Summary judgment was proper because there were no genuine issues of material fact and Alcan was entitled to judgment as

a matter of law. Fed.R.Civ.P. 56. Carlsberg makes three arguments to the contrary.

■ First, it says that there was a genuine issue as to whether the P.G. & E. easement was open and notorious. Not so. It is uncontroverted that the easement exists, that the wires cross the property and that the wires and towers were visible from various parts of the property. It does not matter that Carlsberg claims not to have known of the easement or of the wires and towers. There was an open, notorious and permanent physical servitude on the land. *McCarty v. Wilson,* 1920, 184 Cal. 194, 199–200, 193 P. 578.

Second, Carlsberg claims that it should have had an opportunity to introduce at trial evidence to rebut the presumption that it intended to take the property subject to the open, notorious and permanent physical encumbrance. However, where that presumption operates, it is a conclusive presumption. That is clear from the California cases. *Id.; P.G. & E. v. Minnette,* 1953, 115 Cal.App.2d 698, 252 P.2d 642; *Evans v. Faught,* 1965, 231 Cal.App.2d 698, 709, 42 Cal.Rptr. 133 (citing earlier cases).

It is significant that the contract between the parties contains the following provision:

"Buyer [Carlsberg] acknowledges that it is not and will not act in reliance upon any representations made by Seller to Buyer or upon any information supplied by Seller. Buyer is acting, and will act only upon information obtained by it directly from its inspection of the purchase [sic] property and from public records or from independent third parties." *See Gifford v. Roberts,* 1947, 81 Cal.App.2d 712, 718, 184 P.2d 942.

An intending purchaser who undertakes to make his own examination of the property and who goes upon it for that purpose, and with a free opportunity to make a thorough examination without interference by the seller or anyone acting in his behalf, will be conclusively presumed to have acquired all of the information which would be disclosed to him if his inquiry should be pursued with ordinary diligence.

Third, Carlsberg says that the district court should have made a finding of fact that the price to be paid for the land was just and reasonable. That question was not raised below, and therefore may not be raised here. Whether it can be raised here is a procedural question, governed by federal law, this being a federal court. *See Walker v. Armco Steel Corp.,* 1980, 446 U.S. 740, 747, 100 S.Ct. 1978, 1983, 64 L.Ed.2d 659; *Seattle Totems, Inc. v. National Hockey League,* 9 Cir., 1981, 652 F.2d 852, 854. Findings of fact are not required when a summary judgment is entered under Rule 56 F.R.Civ.P. *Fromberg, Inc. v. Gross Mfg. Co.,* 9 Cir., 1964, 328 F.2d 803, 806.

Moreover, we note that in an affidavit, Richard Carlsberg states:

" . . . the subject property has not decreased in value, and in fact is increasing in value. . . . [I]t is thus apparent that the subject property has a market value in excess of [$4,051,738.75]." CR 65, Affidavit of Richard P. Carlsberg, pp. 4–5.

If anything, the property was under priced in the parties' contract. The price was, if anything, better than reasonable from Carlsberg's standpoint. Carlsberg cannot complain, and Alcan is not complaining about it.

### IV.  Contempt of Court, Case No. 81–4450.

■ Carlsberg raises two arguments against the contempt order, but neither is sound. First, it says that the order must fall with the order for summary judgment. However, we have sustained the order for summary judgment. Second, it says that the district court has no power to enforce the summary judgment by a contempt order because the summary judgment order was not a final order. We have found that it is a final order.

### V.  Attorneys' Fees.

■ Plaintiff-appellee requests attorneys' fees for services on appeal, as provided for in the contract, ¶ 4.05. Being the successful party, it is entitled to an award

as requested. The matter is referred to the district court to determine the amount and enter a supplemental judgment for the fees awarded. *See Suzuki v. Yuen,* 9 Cir., 1982, 678 F.2d 761, 763.

The judgment and the order appealed from are affirmed.